IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

PAMELA MEINE, )
)
       Plaintiff, )
)
vs. ) Case No. 2:22-cv-04167-MDH
)
SOUTHERN GLAZER'S )
WINE & SPIRITS )
)
)
       Defendant. )

## ORDER

Before the Court is Defendant's Motion for Summary Judgment.[1] The parties have filed extensive sur-replies on various legal and factual issues. The matter is ripe for review and the Court has considered all briefing. For reasons herein, Defendant's Motion is **GRANTED IN PART and DENIED IN PART**.

## BACKGROUND

Defendant Southern Glazer's Wine & Spirits ("Defendant" or "Southern Glazer's") employs Plaintiff Pamela Meine ("Plaintiff" or "Meine") as a lead merchandiser. Defendant is a wholesale distributor of beer, wine, and spirits for retail businesses in several states including Missouri. Defendant's Missouri merchandising operations appear to be broken into four regional divisions: St. Louis, Kansas City, Springfield, and Columbia. Plaintiff started working at Southern Glazer's through a temporary employment agency as a merchandiser in November 2017. Southern

---

[1] Also before the Court is Plaintiff's Motion to for Leave to File a Brief Response to Defendant's Opposition to Plaintiff's Sur-reply, which is **GRANTED**. The Court has considered all briefing in formulating this order.

1

Glazer's then hired Plaintiff to be a merchandiser in February 2018. Plaintiff was promoted to lead merchandiser for the Columbia region in July 2018. Throughout her tenure with Southern Glazer's, Plaintiff has always worked within Defendant's Columbia merchandising region.

Plaintiff claims that, though she was technically employed as a lead merchandiser, "by October 2018, Plaintiff was doing essentially all the work of a merchandising manager." (Doc. 1-1 at ¶ 10). Though doing the work of a merchandising manager, Plaintiff received less overall compensation than other merchandising managers employed by Defendant in Missouri, all of whom are men. Plaintiff worked at an hourly rate, while male merchandising managers earned a salary. Plaintiff was also ineligible for a bonus, unlike male merchandiser managers. Plaintiff's allegations concern not the dollar amount of her hourly rate, but instead the broader compensation package, including a salary instead of hourly wages, received by male merchandising managers.

According to Plaintiff, the reason she performed merchandising manager duties while still a lead manager, is that Dave Sloss, the former Columbia merchandising manager, became the manager for the St. Louis region in mid-2018 and the Columbia position remained unfilled. Plaintiff then assumed Sloss' former duties during this official vacancy. Meine then applied for the Columbia merchandising manager position once it was officially advertised around September 2021. Defendant interviewed four job applicants altogether, three males and one female (Plaintiff). Plaintiff's candidacy ultimately proved unsuccessful. Instead, Defendant hired Kyle Wolfe, a male lead merchandiser from Defendant's Kansas City merchandising region. Following the October 2021 announcement that Plaintiff had not been selected for the Columbia merchandising manager job, Plaintiff stopped performing merchandising manager duties. (Doc. 47 at 7). Plaintiff alleges she filed her administrative charge of discrimination with the Missouri Human Rights Commission December 15, 2021, received a right-to-sue letter August 5, 2022, and filed the present lawsuit in

the Circuit Court of Boone County, Missouri October 6, 2022. Defendant thereafter removed this matter this Court under diversity jurisdiction. Plaintiff's complaint alleges unequal compensation and failure to promote based on sex discrimination under the Missouri Human Rights Act ("MHRA") § 213.055.

## STANDARD OF REVIEW

Summary judgment is proper where, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1359 (8th Cir. 1993). "Where there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." *Quinn v. St. Louis County*, 653 F.3d 745, 750 (8th Cir. 2011). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets the initial step, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986). To satisfy this burden, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## DISCUSSION

### I. Plaintiff Timely Exhausted Administrative Remedies

Missouri statute requires that any person claiming to be aggrieved under the MHRA file a verified complaint with the Missouri Human Rights Commission ("MHRC") "within one hundred eighty days of the alleged act of discrimination" RSMO § 213.075.1. Failure to do so "shall deprive the [MHRC] of jurisdiction to investigate the complaint." Missouri statute also requires a plaintiff

3

Case 2:22-cv-04167-MDH   Document 66   Filed 03/27/24   Page 3 of 20

to sue an employer, if at all, no more than ninety days after issuance of a right-to-sue letter, but not more than two years after the complained-of conduct. RSMO § 213.111.1.

Missouri Courts, however, recognize the continuing violation theory, under which "a victim of discrimination may pursue a claim for an act occurring prior to the statutory period, if she can demonstrate the act is part of an ongoing practice or pattern of discrimination by her employer." *Plengemeier v. Thermadyne Indus., Inc.,* 409 S.W.3d 395, 401 (Mo. Ct. App. 2013). The continuing violation doctrine constitutes an equitable exception to the statute's timeline that courts must apply sparingly. *Bozue v. Mut. of Omaha Ins. Co.*, 536 F. Supp. 3d 438, 449 (E.D. Mo. 2021). A continuing violation theory requires that at least one allegedly unlawful act occur within the statutory filing period and that the conduct at issue reflects an ongoing, interrelated series of events. *Plengemeier* at 409.[2] Under Missouri precedent, "a one-time employment action affecting a

---

[2] The parties' briefing suggests that the Missouri Court of Appeals in *Gill v. City of St. Peters*, 641 S.W.3d 733, 738 (Mo. Ct. App. 2022) found that the continuing violation theory is altogether unavailable for discrimination claims brought under the MHRA statute following 2017 amendments to the statute by the Missouri legislature. The 2017 amendments include the following relevant language added onto subsection one.

> The failure to timely file a complaint with the commission shall deprive the commission of jurisdiction to investigate the complaint. The commission shall make a determination as to its jurisdiction with respect to all complaints. Notwithstanding any other provision of this chapter to the contrary, if a complaint is not filed with the commission within one hundred eighty days of the alleged act of discrimination, the commission shall lack jurisdiction to take any action on such a complaint other than to dismiss the complaint for lack of jurisdiction. The failure to timely file a complaint with the commission may be raised as a complete defense by a respondent or defendant at any time, either during the administrative proceedings before the commission, or in subsequent litigation, regardless of whether the commission has issued the person claiming to be aggrieved a letter indicating his or her right to bring a civil action and regardless of whether the employer asserted the defense before the commission. RSMO § 213.075.1.

To the extent the court in *Gill* in fact interpreted the above language to reflect the Missouri Legislature's intent to make the continuing violation theory altogether unavailable for discrimination claims under the MHRA, such a holding makes no sense. The continuing violation theory and the amended text of § 213.075.1, both require the timely filing of a complaint with the MHRC. The continuing violation theory is not a vehicle by which plaintiffs may allege otherwise untimely acts of discrimination. Rather, the continuing violation theory is a framework through which to assess a particular type of discrimination claim

4

continuing loss of pay is not a continuing violation and is untimely if not brought within the statutory period." *Gill v. City of St. Peters*, 641 S.W.3d 733, 740 (Mo. Ct. App. 2022) (citations omitted). Perhaps the clearest example of a continuing violation is a hostile work environment allegation, which by nature involves claims of repeated conduct. *Tisch v. DST Sys., Inc.*, 368 S.W.3d 245, 254 (Mo. Ct. App. 2012) (citations omitted). On the other hand, "easily identifiable," "discrete acts," like failure to promote or refusal to hire, do not give rise to a continuing violation claim. *Id*.

In the present case, though ongoing loss of pay is typically considered a continuing impact rather than a continuing violation, Plaintiff does not allege any pay differential results from a one-

---

brought under the MHRA. Under Missouri precedent in existence prior to 2017, if a plaintiff fails to allege at least one discriminatory act within the 180-day statutory timeframe, even if the plaintiff's allegations otherwise support a continuing violation claim, such a claim is untimely and untenable. *Plengemeier* at 401-03. Similarly, under the 2017 amendments to § 213.075.1, if a plaintiff has failed to file a complaint with the MHRC within 180 days of the complained-of action, the plaintiff's complaint is untimely and the MHRC must not investigate the claim for want of jurisdiction. In other words, the text of the 2017 § 213.075.1 amendments as well as preexisting continuing violation precedent appear entirely consistent with one another. Given this consistency, it remains unclear how the 2017 amendment would at all implicate the availability of the continuing violation doctrine. Further, the court in *Gill* specifically found that, in that case, the plaintiff's complaint with the MHRC was untimely regardless of whether the 2017 amendment applied. This indicates that, to the extent *Gill* sought to make unavailable the continuing violation theory for discrimination claims under the MHRA, such a finding is dicta. *Swisher v. Swisher*, 124 S.W.3d 477, 482 (Mo. Ct. App. 2003) (statements non-essential to the court's decision making constitute dicta that is not controlling) (citations omitted). This position finds further support from the various federal courts that have, after *Gill*, found, at least implicitly, that continuing violation theory claims remain available under MHRA discrimination claims. *See, e.g., Smith v. GM*, No. 4:20-cv-562-MTS, 2023 U.S. Dist. LEXIS 18436, at *10 (E.D. Mo. Feb. 3, 2023); *Doe v. Wentzville R-IV Sch. Dist.*, No. 4:22-cv-00461-MTS, 2023 U.S. Dist. LEXIS 65703, at *26 (E.D. Mo. Apr. 14, 2023); *Chambers v. Padda*, No. 4:20-cv-01617-SEP, 2022 U.S. Dist. LEXIS 55349, at *9 (E.D. Mo. Mar. 28, 2022). Defendant contends these cases are unpersuasive because they fail to analyze "the impact of the jurisdictional limitations in § 213.075.1 on the continuing violation theory." (Doc. 55 at 6). This is because, as described above, the jurisdictional limitations in § 213.075.1 have no impact on the continuing violation theory.

time employment action. Instead, Plaintiff alleges that on a regular basis for a period of approximately three years, Defendant regularly and routinely required her to complete job duties at the merchandising manager level, though she was employed and compensated only at the lead merchandiser level. *Id*. In this sense, Plaintiff's unequal compensation claim is more akin to a continuing hostile work environment claim than an allegation that a one-off event leading to multiple lower paychecks. This position finds support in various places throughout the record, notably Plaintiff's September 13, 2019 email to Derek Janssen, in which Plaintiff describes an ongoing, regular set of job requirements, allegedly beyond the stated demands of Plaintiff's position of lead merchandiser, for which Defendant failed to adequately compensate Plaintiff. (Doc. 40-41). Accordingly, Plaintiff has adequately alleged and argued the existence of an ongoing, interrelated event. Further, Plaintiff has alleged that she filed her administrative charge of discrimination with the Missouri Human Rights Commission on December 15, 2021, which is within 180 days of some of the complained-of conduct giving rise to the unequal compensation allegation, which, according to Plaintiff, persisted until October 2021. Accordingly, this Court finds Plaintiff's filing of the charge with the MHRC reflects a timely exhaustion of administrative remedies sufficient to survive Defendant's Motion for Summary Judgment.

II. **Plaintiff's Pay Discrimination Claim**
   a. *McDonnell-Douglas* **Burden Shifting Applies**

The parties have extensively briefed the issue of whether the three-step burden shifting analysis described in *McDonnell-Douglas* or the federal Equal Pay Act ("EPA") framework governs analysis for Plaintiff's unequal compensation claim. Missouri courts have held that, "In deciding a case under the MHRA, appellate courts are guided by both Missouri law and federal employment discrimination caselaw that is consistent with Missouri law." *Li Lin v. Ellis*, 594 S.W.3d 238, 242 (Mo. 2020) (citations omitted). "The MHRA is not merely a reiteration of Title

6

VII, and in some ways is broader and in other ways more restrictive…When federal caselaw is inconsistent with the plain meaning of the MHRA, it is inapposite for the purpose of interpreting the MHRA." *Gill* at 741 (citations omitted).

Under the *McDonnell-Douglas* analysis in the context of workplace sex discrimination, the employee establishes a *prima facie* discrimination case by showing: "(1) the employee was a member of a protected class; (2) the employee was qualified to perform the job; (3) the employee suffered an adverse employment action; and (4) the employee was treated differently from other similarly situated employees of the opposite sex." *Lampley v. Missouri Comm'n on Hum. Rts.*, 570 S.W.3d 16, 24 (Mo. 2019). The burden then shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the employer satisfies this requirement, the burden returns to the employee to show the employer's stated reason is pretextual. *Id*. at 804. In contrast, to establish a *prima facie* case under the federal EPA, the plaintiff must show "that the defendant paid male workers more than she was paid for equal work in jobs that required equal skill, effort, and responsibility and were performed under similar conditions." *Buettner v. Arch Coal Sales Co.*, 216 F.3d 707, 719 (8th Cir. 2000). If an employee sufficiently establishes a *prima facie* case, the employer must then "prove the pay differential is based on a factor other than gender." *Id*.

The text of the 2017 amendments to the MHRA make sufficiently plain that the *McDonnell-Douglas* burden shifting analysis is the appropriate framework through which to consider Plaintiff's MHRA unequal compensation claim. In 2017 the Missouri Legislature amended section 213.101, titled Construction of Statutes, to include subsection three, which provides, "If an employer in a case brought under this chapter files a motion pursuant to rule 74.04 of the Missouri rules of civil procedure, the court shall consider the burden-shifting analysis of

7

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny to be highly persuasive for analysis in cases not involving direct evidence of discrimination." RSMO § 213.101.3. The same 2017 amendments introduced subsection four, which specifically abrogates Missouri Supreme Court precedent that substituted a more liberal contributing-factor standard for the stricter *McDonnell-Douglas* framework in analysis of claims brought under the MHRA.

While, as Plaintiff notes, these amendments do not explicitly command that this Court use only the *McDonnell-Douglas* framework, the amended language is sufficiently clear, given the specific facts and allegations of the present case, that the *McDonnell-Douglas* framework is most persuasive under current Missouri law. *See also Bonomo v. Boeing Co.*, 63 F.4th 736, 742 (8th Cir. 2023) (applying *McDonnell-Douglas* to claim of discrimination under MHRA).

### b. Plaintiff has not identified co-workers who are sufficiently similarly situated

The parties specifically contest whether Plaintiff has identified similarly situated comparators, as is required for a *prima facie* case. "The test to determine whether employees are similarly situated to warrant a comparison to a plaintiff is a rigorous one." *E.E.O.C. v. Kohler Co.*, 335 F.3d 766, 775 (8th Cir. 2003) (citations omitted). Plaintiff must show she was treated differently than other male employees "similarly situated in all relevant respects." *Gibson v. Concrete Equip. Co., Inc.*, 960 F.3d 1057, 1063 (8th Cir. 2020) (citations omitted).

Though confusing from Plaintiff's briefing and pleadings, Plaintiff appears to contend that only two Southern Glazer's employees are similarly situated: Dave Sloss when he was the Columbia merchandising manager from May 1, 2017 until January 1, 2018 and Kyle Wolfe once he accepted the Columbia merchandising manager position in October 2021. (Doc. 47-1 at ¶¶ 16, 97). Plaintiff specifically denies that she compares herself to Bill Blando, merchandising manager

8

Case 2:22-cv-04167-MDH   Document 66   Filed 03/27/24   Page 8 of 20

for Kansas City, and Chris Crawley, merchandising manager for Springfield. (Doc. 47-1 at ¶ 97).[3] When Sloss was hired as Columbia merchandising manager, he earned a base salary of $44,500 with the possibility of up to $6,000 annual bonus. (Doc. 55-1 at ¶ 82). Plaintiff contends that Wolfe earned $50,000 annually when he was hired for the Columbia merchandising manager position in October 2021. (Doc. 55-1 at ¶ 83).[4] On the other hand, Plaintiff earned a base salary of $30,147.20 in 2019, $31,572.40 in 2020, and $32,414.40 in 2021. Plaintiff's total take home pay, including overtime, was $42,096.64 in 2020 and $48,391.85 in 2021. The record does not establish Defendant's take home pay for 2019 or earlier. Defendant contends Sloss and Wolfe are not similarly situated for several reasons. This Court will address each in turn.

### i. Different pay scales

Defendant first contends Sloss is not similarly situated because, as a merchandising manager, he is a salaried employee, while Plaintiff remains an hourly worker. The crux of Plaintiff's claim, however, is that she was undercompensated vis-à-vis male employees who

---

[3] Plaintiff's complaint references three merchandising managers employed by Defendant in Missouri: Dave Sloss; Chris Crawley; and Bill Blando. The Complaint does not, however, specifically identify these three individuals as similarly situated employees. The Complaint contains no reference to Wolfe. Plaintiff's briefing regularly mentions Sloss, Crawley, Blando, and Wolfe and argues variously that all three are similar to Plaintiff. Confusingly, however, Plaintiff's response to Defendant's Statement of Undisputed Facts contends that she denies she "compares herself to Mr. Crawley and Mr. Blando." (Doc. 47-1 at ¶ 97). But "admit[s] that she compares herself to Mr. Sloss when he was the Columbia territory Merchandising Manager. She also compares herself to Mr. Wolfe when he was the Columbia territory Merchandising Manager." *Id*. This reflects Plaintiff's most definite statement regarding which coworkers Plaintiff believes to be similarly situated. Accordingly, this Court proceeds with the understanding that Plaintiff contends the only similarly situated employees are Sloss while Sloss was Columbia merchandising manager between May 1, 2017 and January 1, 2018 and Wolfe when he held the same role starting October 2021. Contrary to Defendant's claim, however, Wolfe's absence from Plaintiff's Complaint is not necessarily fatal to Plaintiff's unequal compensation charge because "the *prima facie* case under *McDonnell Douglas*…is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). To the extent Plaintiff intended to argue Crawley and Blando were also similarly situated, such comparisons fail due to differences in relevant professional experience and geographic area between, on one hand, Plaintiff, and on the other, Crawley and Blando.

[4] Defendant disputes this figure, but only on the basis that Plaintiff has failed to submit into the record the interrogatory responses that include this information. Defendant does not contend this figure is inaccurate.

performed the same job duties. Both Plaintiff and Defendant agree that Plaintiff's allegations concern not the dollar amount of her hourly rate, but instead the broader compensation package, including a salary instead of hourly wages, received by male merchandising managers. It is therefore axiomatic that Plaintiff and Sloss depart in terms of pay scale. This departure is the foundation of Plaintiff's lawsuit. Any difference in pay scale proves, therefore, insufficient, under the facts of this specific case, for finding an absence of similarity between Plaintiff and Sloss.

### ii. Sloss is Plaintiff's direct supervisor

Defendant next argues that Plaintiff and Sloss are not similarly situated because Sloss served as Plaintiff's direct supervisor. Such a difference proves insufficient on its own to show absence of similarity. *See Buchheit, Inc. v. Missouri Comm'n on Hum. Rts.*, 215 S.W.3d 268, 280 (Mo. Ct. App. 2007) (finding subordinate and supervisor sufficiently similar). While Plaintiff acknowledges that Sloss served as her direct manager while she performed the duties of the Columbia merchandising manager, Plaintiff contends this dynamic existed on paper only, and that Sloss simply rubberstamped any of Plaintiff's work that needed official approval. According to Plaintiff, while she was technically employed as only a lead merchandiser, her actual job requirements were akin to, or the same as, those placed on Sloss in his role as merchandising manager. *See Orahood v. Bd. of Trustees of Univ. of Arkansas*, 645 F.2d 651, 654 (8th Cir. 1981) ("We look to the actual job requirements and performance, not on-job classifications or titles.") (citations omitted). Though Plaintiff may have directly reported to Sloss, given Plaintiff's specific allegations about her actual job requirements and performance, Sloss' seniority over Plaintiff is insufficient to demonstrate absence of requisite similarity.

10

Case 2:22-cv-04167-MDH   Document 66   Filed 03/27/24   Page 10 of 20

### iii. Relevant professional experience

Plaintiff departs sharply, however, from both Sloss and Wolfe in terms of relevant professional experience. The departure between Plaintiff and her comparators in terms of relevant professional experience is material to Plaintiff's claim of unequal compensation, as Southern Glazer's considers, *inter alia*, someone's "experience level" and "internal equity" before setting an initial salary for the merchandising manager position. (Doc. 40-4 at ¶ 7). Sloss had been employed by Southern Glazer's since March 7, 2011, six years before assuming the role of merchandising manager for the Columbia region May 1, 2017. Wolfe, likewise, had been employed by Southern Glazer's since March 25, 2013, more than eight years before starting as the Columbia region merchandising manager in October 2021. In contrast, Plaintiff began working at Southern Glazer's as a merchandiser in November 2017, but this employment was through a temporary employment agency, not directly through Defendant. Defendant did not employ Plaintiff directly until February 19, 2018 when Southern Glazer's hired Plaintiff for the same role she had been doing as a temporary employee. Plaintiff was promoted to lead merchandiser for the Columbia region in July 2018. According to Plaintiff's Complaint, by October 2018 she was fully performing the job duties of a merchandising manager. Including the period Plaintiff worked for the temporary employment agency, Plaintiff had, therefore, been working at Southern Glazer's no more than eleven months by the time she alleges she began performing the job of merchandising manager. By the time Plaintiff stopped performing the duties of a merchandising manager in October 2021, Plaintiff had been working at Southern Glazer's for fewer than four years, including the months she was employed by the temporary employment agency. At the same time, by October 2021, Southern Glazer's had employed Sloss for more than a decade, and Wolfe for more than eight years.

Plaintiff also departs sharply from Sloss and Wolfe in terms of relevant professional experience before beginning at Southern Glazer's. Plaintiff had been outside the formal workforce about ten years before starting as a temporary employee at Southern Glazer's in 2017. Plaintiff also lacked formal managerial or merchandising experience prior to her employment with Southern Glazer's. In contrast, beyond his experience with Southern Glazer's, Wolfe also worked in a merchandising role with Pepsi for more than six months. Though unclear whether Sloss had managerial or merchandising experience before beginning work with Southern Glazer's, he appears to have had other recent retail workforce experience at a grocery store. Finally, Sloss had prior managerial experience as a merchandising supervisor, responsible for managing about thirteen Southern Glazer's employees, immediately before promotion to merchandising manager.

Collectively, this significant departure in terms of relevant workforce experience demonstrates any comparison between Plaintiff and Wolfe and/or Sloss for purposes of Plaintiff's unequal treatment claim is effectively useless. *See Cox v. Kansas City Chiefs Football Club, Inc.*, 473 S.W.3d 107, 123 (Mo. 2015) (comparators need not be identical under MHRA, but sufficiently similar so to avoid "effectively useless" comparisons). To be clear, this finding does not automatically suggest that Plaintiff is less qualified than Sloss or Wolfe for the merchandising manager position. Rather, agreed-upon facts about Plaintiff's experience vis-à-vis the experience of Sloss and Wolfe, combined with Defendant's internal guideline that shows experience level and internal equity impact starting pay, show Plaintiff is not similarly situated to Sloss and Wolfe for her claim of unequal compensation. Accordingly, Plaintiff has failed to establish a *prima facia* case of compensation discrimination under Count One. Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's unequal compensation claim.

### III. Plaintiff's Failure to Promote Claim

Plaintiff's second claim is an allegation of discriminatory failure to promote based on her unsuccessful candidacy for the Columbia merchandising manager position, once Defendant officially began hiring for the role around September 2021. Plaintiff interviewed for the job around September 23, 2021 and was informed on October 19, 2021 that she had not been successful. Defendant instead awarded the position to Kyle Wolfe, a male candidate.

Under the *McDonnell-Douglas* framework for a claim of discriminatory failure to promote, a *prima facie* case consists of showing: 1) the plaintiff is in a protected class; 2) the plaintiff was qualified for the position for which she applied; 3) the plaintiff was denied the position; and 4) a person not in the same protected class ultimately received the position. *Nelson v. USAble Mut. Ins. Co.*, 918 F.3d 990, 993 (8th Cir. 2019). If a *prima facie* case is established, the burden then shifts to the defendant to articulate a non-discriminatory reason for the hiring decision. *Id*. Finally, the burden returns to the plaintiff to offer evidence that the stated reason is simply pretext for discrimination. *Id*.

In the present matter, it appears undisputed, and this Court agrees, that Plaintiff has established a *prima facie* case. Rather, Defendant argues Plaintiff has failed to put forth sufficient evidence to show stated reasons for not hiring defendant reflect pretext. Defendant's briefing on the matter, as well as the record generally, reference several alternative reasons for choosing Wolfe instead of Plaintiff for the vacant merchandising manager position: 1) Wolfe's prior experience including with sales; 2) willingness to relocate to Columbia; 3) Wolfe's positive reviews from other Southern Glazer's co-workers; 4) Wolfe's display of passion and genuine interest in the vacant position. In response, Plaintiff offers seven arguments as to why Defendant's alleged

13

reasons for not promoting Plaintiff constitute pretext. This Court will address Plaintiff's points in turn.

   a. **No prior female merchandising managers in Missouri**

Plaintiff claims Defendant's stated reasons reflect pretext because Defendant has never employed a female merchandising manager in Missouri. Defendant does not appear to contest this allegation. This statistical information, though inconclusive on its own, may prove relevant alongside other evidence to illuminate possible intentional discrimination. *Gentry v. Georgia-Pac. Corp.*, 250 F.3d 646, 652 (8th Cir. 2001); *Cox v. First Nat. Bank*, 792 F.3d 936, 941 (8th Cir. 2015).

   b. **Unequal treatment of Plaintiff and Wolfe during job application process**

Plaintiff argues pretext is evidenced by unequal treatment of Wolfe and Plaintiff during the hiring process. Specifically, Plaintiff argues discrimination is shown by Defendant interviewing Wolfe twice, but Plaintiff only once. Defendant does not contest this allegation, but claims Wolfe received a second interview only because he indicated willingness to move to Columbia for the position. Parties agree that Plaintiff did not indicate willingness to move to Columbia from her home near Warrenton, Missouri, but instead explained to interviewers that she believed she would be able to complete the job requirements while commuting from Warrenton. Defendant notes that Joe Bankson, a third applicant Defendant interviewed for the vacancy who worked for Southern Glazer's in Springfield, also indicated that he would be unwilling to relocate to the Columbia area for the job. The record does not appear to reflect, however, whether Bankson was granted a second interview. Further, Bob Hannah, at the time a director of merchandising at Southern Glazer's, testified that he did not know why Plaintiff was not granted a second interview during the hiring process. Collectively, this shows a genuine question remains as to the degree to which Defendant's

14

failure to interview Plaintiff more than once resulted from Plaintiff's apparent unwillingness to relocate to Columbia. While failure to interview Plaintiff as often as male applicants does not on its own establish pretext, such evidence, considered alongside other evidence, may prove probative of intentional discrimination.

   c. **Willingness to relocate to Columbia**

Plaintiff argues that Defendant's stated reason of not hiring Plaintiff because of unwillingness to move to Columbia is pretext because the original job description failed to include Columbia residence as a requirement of the position. It is also pretext, Plaintiff argues, because Southern Glazer's never previously required a merchandising manager in Missouri to live in the city where the region's headquarters are located. This includes, Plaintiff notes, Sloss, who, while working as merchandising manager for Columbia, lived in Wentzville, Missouri. The parties further disagree as to how the issue of living in Columbia was communicated to Plaintiff, Wolfe, and Bankson during their interviews. Plaintiff argues she was told only that it would be "ideal" for the Columbia merchandising manager to live in Columbia, but that Wolfe and Bankson were told living in Columbia is a requirement for the job. Defendant generally disagrees, contending it was made clear to Plaintiff during the interview that the successful candidate would be based in Columbia.

Defendant claims living in Columbia was determined to be a requirement for the merchandising manager in part due to concerns about the performance of the Columbia merchandising team. Defendant's thinking appears to have been that a manager in Columbia would be able to exert more control over employees in Columbia. Defendant argues that the selection of Wolfe over Bankson, who had significant experience with Southern Glazer's but also indicated unwillingness to move to Columbia, demonstrates that reluctance to relocate was a legitimate

15

reason for not hiring Plaintiff. There is limited probative value, however, in Defendant's decision to forego Bankson because of his unwillingness to relocate from Springfield, given the significant geographic distance between Springfield and Columbia, compared to Warrenton and Columbia. It is conceivable someone could commute daily the approximate hour between Warrenton and Columbia without impacting job performance. The same cannot reasonably be said for the nearly three-hour drive between Springfield and Columbia.

Collectively, this evidences disagreement between the parties as to the facts surrounding how relocation to Columbia impacted Defendant's decision to not hire Plaintiff. Contrary to Defendant's claim, Plaintiff has cited specific evidence to support her point (e.g. content of the original job description, deposition testimony highlighting prior practice within Southern Glazer's, and a signed declaration and deposition testimony highlighting alleged differences in how the relocation was communicated to Plaintiff during the interview vis-à-vis male candidates). "A submissible case of discriminatory failure to promote can be made with, among other things, evidence that the employer's purported reason for failing to promote was not an original qualification for the position, the plaintiff met many of the qualifications for the position, and the chosen candidate was not as qualified for the position as the employer had suggested." *Eivins v. Missouri Dep't of Corr.*, 636 S.W.3d 155, 168 (Mo. Ct. App. 2021). The extent to which Defendant genuinely declined to hire Plaintiff because of unwillingness to relocate may prove probative as to the existence of intentional discrimination.

### d. Job-specific qualifications

Plaintiff contends she is more qualified for the merchandising manager position than Wolfe because she had been performing the job of merchandising manager since October 2018 and because she received more positive feedback than Wolfe in performance reviews. Plaintiff further

contends that Defendant's interview guide required the interviewers to favor the interviewee whose prior experience proves most relevant given the job description of the vacant position. A close read of the interview guide, however, shows Plaintiff's description is at best gratuitous, as the guide simply advises interviewers, when preparing for the interview, to "determine which jobs/experiences that the candidate possesses are most relevant to the target role." (Doc. 47-46 at 1). Contrary to Plaintiff's claim, the guide appears to *require* nothing of the interviewers.

Defendant contends that it has never argued that Wolfe was most qualified by the metrics that Plaintiff cites. *See Cox v. First Nat. Bank*, 792 F.3d 936, 939 (8th Cir. 2015) ("it is the employer's role to identify those strengths that constitute the best qualified applicant.) (citations omitted). Defendant, however, in its evaluation of Wolfe's qualifications vis-à-vis Plaintiff's, has specifically emphasized not only Plaintiff's professional experience, but also her unwillingness to relocate and feedback received from other coworkers. In other words, Defendant has adopted a broad understanding of Plaintiff's "qualifications" for the vacant position, including metrics like unwillingness to relocate. For Defendant, Plaintiff's "qualifications" are not only experiences one may find on a resume, but rather one's broader fit for the position.

As discussed above, Plaintiff has shown via record evidence sufficient factual disagreement between the parties on the role Plaintiff's unwillingness to relocate played in Defendant's selection of Wolfe. While Plaintiff has arguably not demonstrated her professional experience alone makes her a stronger candidate than Wolfe[5], Plaintiff has demonstrated that factual disagreement remains as to the issue of what role any unwillingness to relocate played in Defendant's hiring decision.

---

[5] It is worth noting that a finding that Plaintiff is more qualified than Wolfe in terms of either prior experience or qualifications more broadly, would not prove inconsistent with this Court's finding regarding whether Plaintiff and Wolfe are similarly situated for purposes of Plaintiff's unequal compensation claim. While Plaintiff may have been less experienced than Wolfe so to, by company personnel guidelines, be paid less than Wolfe for performing similar job duties, this does not necessarily mean that she was overall

### e. Alleged discriminatory conduct by Eric Okler

Plaintiff contends that pretext exists because of discriminatory animus specifically on the part of Eric Okler, Southern Glazer's director of sales for the Columbia region. Plaintiff's argument about Okler amounts to a "cat's paw" theory of liability. "In the employment discrimination context, 'cat's paw' refers to a situation in which a biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action." *Qamhiyah v. Iowa State Univ. of Sci. & Tech.*, 566 F.3d 733, 742 (8th Cir. 2009) (citations omitted). "In a cat's paw case, an employer may be vicariously liable for an adverse employment action if one of its agents—other than the ultimate decision maker—is motivated by discriminatory animus and intentionally and proximately causes the action." *Bennett v. Riceland Foods, Inc.*, 721 F.3d 546, 551 (8th Cir. 2013). To establish liability under a cat's paw theory, a plaintiff must show "that [someone] possess[ed] both (1) the necessary [discriminatory] animus and (2) influence, leverage or control over the decisionmaker, such that it could be said the decisionmaker was acting at the person's bidding." *Lovelace v. Washington Univ. Sch. of Med.*, 931 F.3d 698, 706 (8th Cir. 2019) (*citing Edwards v. Lynch*, 111 F. Supp. 3d 989, 1003 (W.D. Mo. 2015)). Plaintiff has failed to meet this two-part burden. The closest evidence within the record to support a finding of discriminatory animus on the part of Okler is Plaintiff's allegation that Okler once used the phrase "too emotional" in relation to some of Plaintiff's emails. (Doc. 47-1 at ¶ 128). Plaintiff, however, testified that she cannot recall any details surrounding

---

less qualified than Wolfe to be hired for the vacant merchandising manager position. Put differently, the qualities that make one a successful job candidate are not necessarily the same qualities that lead to a higher starting salary once someone is selected for the position. This is particularly true in the instant case, where Defendant employs an internal personnel guideline that specifically sets base salaries in part on one's "experience level" and "internal equity." (Doc. 40-4 at ¶ 7).

Okler's use of the phrase and never sought clarification from Okler regarding his intent. In other words, Plaintiff can offer no context to assist this Court in evaluating whether Okler's alleged "too emotional" comment reflects some sort of discriminatory intent. Without more, Okler's words cannot serve as evidence of discriminatory animus required for Plaintiff's cat's paw liability.

   f. **Conflicting accounts of hiring responsibility**

Plaintiff contends pretext exists because Bob Hannah and Michelle Wilson, two Southern Glazer's employees involved in the process of hiring for the vacant merchandising manager position, gave conflicting accounts of who ultimately made the decision to not extend an offer to Plaintiff. According to Plaintiff, a reasonable jury could see these conflicting accounts as demonstrative of reluctance to take responsibility for a wrongful employment decision. *See Alley v. Foley Industries Inc.,* 2:20-CV-04054-NKL, 2021 WL 5999266, at *7 (W.D. Mo. Dec. 20, 2021) ("The fact that no one at an employer is willing to accept responsibility for a termination is evidence that the proffered reasoning is pretextual…") (citations omitted). Plaintiff cites to Hannah's and Wilson's deposition transcripts in support. When Hannah was asked, "Who decided to hire someone into the Columbia merchandising manager position in 2021?", Hannah responded, "It was a joint decision…I was involved. Michelle Wilson was involved." (Doc. 40-22 at 4). In contrast, when Wilson was asked, "Who would get to make the final decision about who was going to get that job?", Wilson responded, "The final decision is always placed in a hiring manager. In this case that is Bob Hannah." (Doc. 47-8 at 8). True, Wilson later responded "*We* did not", when asked whether Plaintiff was selected for the job. (Doc. 47-8 at 11) (emphasis added). This vague use of the word "we," however, does not detract from Wilson's clear indication that the final hiring decision belonged to Hannah. Contrary to Defendant's argument, clear conflict exists between

19

Hannah and Wilson as to who made the final decision to hire Wolfe instead of Plaintiff, which may reasonably evidence requisite pretext.

Collectively, considering the entirety of the above-discussed record evidence, this Court finds Plaintiff has done "more than simply create a factual dispute as to the issue of pretext; [s]he [has] offer[ed] sufficient evidence for a reasonable trier of fact to infer discrimination." *Bonomo v. Boeing Co.*, 63 F.4th 736, 742 (8th Cir. 2023). Put differently, Plaintiff has offered sufficient evidence to allow a reasonable jury to, not only dis-believe Defendant, but also to believe Plaintiff's allegation of intentional discrimination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) ("It is not enough, in other words, to *dis* believe the employer; the fact-finder must *believe* the plaintiff's explanation of intentional discrimination."). For this reason, Defendant's Motion for Summary Judgment is **DENIED** as to Plaintiff's failure to promote claim.

## CONCLUSION

For foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED IN PART and DENIED IN PART**. Defendant's Motion is **GRANTED** as to Plaintiff's unequal compensation claim, but **DENIED** as to Plaintiff's failure to promote claim.

**IT IS SO ORDERED**.

DATED: March 27, 2024          */s/ Douglas Harpool*
                               **DOUGLAS HARPOOL**
                               **UNITED STATES DISTRICT JUDGE**